UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

EXERGEN CORPORATION,            )
                               )
     Plaintiff/Counter-Defendant,  )    CIVIL ACTION NO.
v.                             )    12-12243-DPW
                               )
BROOKLANDS INC.,               )
                               )
     Defendant/Counter-Plaintiff.  )


MEMORANDUM AND ORDER
February 13, 2018

The plaintiff Exergen's initiative in bringing this patent infringement litigation has proven counterproductive.  The case occasioned my decision to hold the asserted patent itself invalid.  *Exergen* v. *Brooklands, Inc.*, 125 F. Supp. 3d 307 (D. Mass. 2015).  Exergen, nevertheless, undertook to continue the litigation by seeking a determination that it did not commit inequitable conduct with respect to obtaining the invalid patent in the first place.

Before reaching the issue of inequitable conduct, I consider it prudent to address the question whether the prior determination of invalidity should foreclose further litigation.  After consideration of the parties' submissions on that question and analysis of answers found in Federal Circuit case law, I have determined that the question of inequitable conduct is not categorically moot in this case.  As a consequence, it seems the

better part of discretion to address the question of inequitable conduct.

Turning to the merits of the issue of inequitable conduct, I conclude that plaintiff Exergen is entitled to summary judgment. That determination now marks the conclusion of this case in this court.

## I. BACKGROUND

### A. *Procedural Posture*

On December 4, 2012, Exergen Corporation initiated this patent infringement action against Brooklands for alleged infringement of claims 51 and 54 of U.S. Patent No. 7,787,938 ('938 patent). Brooklands asserted affirmative defenses under: 35 U.S.C. § 101 (unpatentable subject matter), § 102 (anticipation), and § 103 (obviousness). Brooklands also asserted a counterclaim against Exergen seeking declaratory judgment that the '938 patent is invalid because of inequitable conduct. Brooklands moved for summary judgment on its affirmative defenses and on August 28, 2015, I granted Brooklands summary judgment under § 101 finding that the '938 patent involved unpatentable subject matter. *Exergen*, 125 F. Supp. 3d at 312-17.

Although the core substantive question in the case — patent infringement — was effectively resolved by the finding of invalidity, Exergen pressed on in opposition to Brooklands'

inequitable conduct counterclaim by filing the motion for
summary judgment now before me. After I raised the question of
mootness, Exergen reversed course and argued that the case
should be terminated without reaching the question of
inequitable conduct. Brooklands, for its part, continued to
maintain it was entitled to resolution of the inequitable
conduct question on the merits. In order to put the issues in
context, an elaboration of the factual and procedural
development of this patent litigation is appropriate.

## B. *Factual Background*

Dr. Francisco Pompei is the founder and CEO of Exergen and
has patented numerous products, in addition to being the named
inventor of the '938 patent. I begin by discussing Exergen's
related patents, of which the '938 patent was a continuation,
and then examine the facts surrounding prosecution of the '938
patent.

### 1. '813 and '238 Patents

Exergen was issued U.S. Patent No. 5,012,813 ('813 patent)
on May 7, 1991. On August 5, 1997, Exergen was issued U.S.
Patent No. 5,653,238 ('238 patent). Dr. Pompei was the named
inventor on both of these patents. Both patents describe a
"heat balance method" in the context of an ear thermometer
device. Both also include broader claims, such as Claim 7 of
the '813 patent:

A radiation detector comprising: a thermopile mounted to view a *target of biological surface* tissue; a temperature sensor for sensing ambient temperature; an electronic circuit coupled to the thermopile and temperature sensor and responsive to the voltage across the thermopile and the temperature sensed by the sensor to provide an indication of an *internal temperature within the biological tissue* adjusted for the ambient temperature to which the surface tissue is exposed; and a display for providing an indication of the internal temperature.

(emphasis added).

Claim 36 of the '238 patent is similarly broad:

A temperature detector comprising: a radiation sensor mounted *to view a target*; a temperature sensor for sensing ambient temperature; an electronic circuit coupled to the radiation sensor and temperature sensor and responsive to a signal from the radiation sensor and the temperature sensed by the temperature sensor to provide an indication of an *internal temperature of the target* adjusted for the ambient temperature to which the target is exposed; and an output for providing an indication of the internal temperature.

(emphasis added).

## 2. '435 Patent

On May 2, 2000, Dr. Pompei was issued U.S. Patent 6,056,435 ('435 patent). The '435 patent, and the related family of patents, claimed a device for detecting internal body temperature in the armpit area. This patent does not assert temperature measurements in the forehead or temporal artery; it recites some claims that extend more broadly. For example, claim 16 states:

A body temperature detector comprising: a radiation sensor which views a *target surface area* of a body;

and electronics which compute an internal temperature
of the body as a function of an ambient temperature
and a sensed surface temperature, wherein the ambient
temperature within the function is an assumed ambient
temperature.

(emphasis added).

### 3.   Prior Litigation

Exergen previously brought suit against forehead

thermometer manufacturers in *Exergen Corp.* v. *Wal-Mart Stores,*

*Inc.*, No. 01-cv-11306-RCL (D. Mass).  There, Exergen asserted

that defendants' thermometers infringed the broad claims of the

'813 patent, the '435 patent (within the '813 patent family),

the '238 patent, the '205 patent (within the '813 patent

family), and '685 patent (predecessor to the '938 patent). In

*Wal-Mart*, Judge Lindsay conducted a hearing on claim

construction of claim 7 of the '813 patent and construed the

terms "biological surface tissue" to mean "a living layer of

external human tissue having a temperature that can be

measured," and "internal temperature" to mean "temperature of

the region existing beneath the surface of the biological tissue

targeted for measurement."  *Exergen Corp.* v. *Wal-Mart Stores,*

*Inc.,* No. 01-cv-11306-RCL at 5-10 (D. Mass filed Jul. 14, 2004).

At the conclusion of the *Wal-Mart* jury trial, the jury found

that Exergen had proved the defendants infringed the '813, '205,

and '685 patents which the jury considered valid.  The Federal

Circuit, however, overturned the jury's determinations that the

'813 and '685 patents were infringed and that the '205 patent was not invalid. *Exergen Corp.* v. *Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1331 (2009).

More recently, in *Exergen Corp.* v. *Kids-Med, Inc.*, No. 08-CV-11416-DPW, 2016 WL 2993165 (D. Mass. May 23, 2016), Exergen alleged that the defendant's forehead thermometers violated the broad claims of the '813 and '435 patents. In *Kids-Med*, I construed the term "target surface area" as used in the '435 patent to differ from the term "target of biological surface area" used in the '813 patent. *Id*. at *6. I construed "target surface area" to mean "an area of a surface within the viewing range of the radiation sensor." *Id*.

4. The '938 Patent

Dr. Pompei is the named patent holder of the '938 patent and its predecessor, the '685 patent. Both patents describe how to obtain body temperature measurements on unprotected body sites, such as the forehead. Attorney James Smith prosecuted the '938 patent. Attorney Smith is an experienced patent practitioner who was admitted to the U.S. Patent Bar in the 1970s and has spent his career performing patent prosecution work.

In prosecuting the '685 patent, Exergen submitted an Information Disclosure Statement, which disclosed the '813, '238 patents. In its January 8, 2008 submission that led to the '938

patent, Exergen disclosed in its Information Disclosure Statement a lengthy list of patents, including the '813, '238, '435, and '685 patents.  During the '938 patent prosecution, Attorney Smith argued that the '813 patent does not "teach[] or suggest[] measuring temperature of a region of the forehead," and that "obtaining measurements of a region of skin of the forehead is not an obvious extension" of the '813 patent."

## II. PROCEDURAL THRESHOLD – MOOTNESS CHALLENGE

Given my determination that the '938 patent is invalid under 35 U.S.C. § 101, a threshold question to continuation of the litigation is whether Brooklands' remaining inequitable conduct counterclaim is now moot.  "Under Article III of the Constitution [a] Court may only adjudicate actual, ongoing controversies." *Honig* v. *Doe*, 484 U.S. 305, 317 (1988); *Aqua Marine Supply* v. *AIM Machining, Inc.*, 247 F.3d 1216, 1219 (Fed. Cir. 2001) ("[I]t is axiomatic that a federal court may not address 'the merits of a legal question not posed in an Article III case or controversy,' and that 'a case must exist at all the stages of appellate review.'").  A case becomes moot when there is a "material change in circumstances that entirely terminate[s] the party's controversy." *See Cardinal Chemical Co.* v. *Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993).

While a case is moot when there is no longer an Article III "case or controversy," a court's "common sense or equitable

considerations" may also serve as a justification for declining to decide a case on the merits, even where dismissal solely on Article III grounds would be improper. *In re AOV Indus., Inc.*, 792 F.2d 1140, 1147 (D.C. Cir. 1986); *In re Pub. Serv. Co. of New Hampshire*, 963 F.2d 469, 471 (1st Cir. 1992) ("The equitable component in the mootness doctrine is rooted in the 'court's discretion in matters of remedy and judicial administration' not to determine a case on its merits.").

Exergen presses an equitable — judicial economy — and not a constitutional argument for treating the case remaining before me as moot. Exergen contends that Brooklands' inequitable conduct counterclaim must be considered moot because the asserted patent has been invalidated, rendering further litigation a wasteful exercise. Brooklands responds that a finding of invalidity does not moot an unenforceability counterclaim where there is a pending request for attorney fees under 35 U.S.C. § 285.[1] The Supreme Court has recently instructed — because the question of attorney fees under § 285 is reserved for exceptional cases, and because "there is no

---

[1] Brooklands specifically included a request for attorney fees in its unenforceability counterclaim. However, no supported motion for attorney fees has been submitted to this court. Rather, the pendency of the underlying inequitable conduct claim and the question of mootness that I raised *sua sponte* have apparently forestalled a formal and fully supported application for attorney fees.

precise rule of formula for making these determinations," *Octane Fitness, LLC* v. *ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014) (quoting *Fogerty* v. *Fantasy, Inc.*, 510 U.S. 517, 534 (1994) — that the matter of attorney fees in this context calls for the exercise of equitable discretion. *Id.* By extension then, it should be a matter of discretion whether even to address the remedy of attorney fees under § 285 arising from allegations of invalidity based on inequitable conduct once the patent at issue has been found invalid on other grounds.

There is an extended array of Federal Circuit cases pre-dating *Octane Fitness* discussing mootness in the context of inequitable conduct claims. I seek to chart a principled way to navigate among them with a recognition that the principles identified must be refracted through the light cast by *Octane Fitness*.

In *Monsanto Company* v. *Bayer Bioscience N.V.*, the Federal Circuit stated:

> The question facing this court is, thus, whether a district court's jurisdiction under § 285 to determine whether there was inequitable conduct in the prosecution of patents that are otherwise no longer in suit confers on that court the jurisdiction to hold such patents unenforceable for inequitable conduct. We hold that it does.

514 F.3d 1229, 1243 (Fed. Cir. 2008). The infringement claims under a number of patents were voluntarily dismissed in *Monsanto*, but the Federal Circuit held that the District Court

"retained independent jurisdiction over Monsanto's request for attorney fees under 35 U.S.C. § 285" and that this "jurisdiction to rule on attorney fees encompassed the jurisdiction to make findings of inequitable conduct regarding all four patents." *Id.* at 1242.

Similarly, in *Advanced Magnetic Closures, Inc.* v. *Rome Fastener Corporation*, the Federal Circuit stated that after withdrawal of a patent invalidity counterclaim, the court nevertheless "retains jurisdiction to consider a motion for attorney's fees under 35 U.S.C. § 285 and to make findings of inequitable conduct—even after a party has dismissed its counterclaims as to that patent." *Advanced Magnetic Closures, Inc.* v. *Rome Fastener Corp.*, 607 F.3d 817, 827 (Fed. Cir. 2010) (citing *Monsanto Co.*, 514 F.3d at 1242-43).

In *Fort James Corp.* v. *Solo Cup Co.*, 412 F.3d 1340, 1345 (Fed. Cir. 2005), the Federal Circuit reviewed a decision in which the District Court dismissed as moot an unenforceability counterclaim "on the ground that there was no outstanding case or controversy between the parties in light of" a covenant not to sue following a jury verdict of non-infringement. The Federal Circuit in *Fort James* reversed because the counterclaim raised issues not disposed of by the decision of non-infringement, namely the complete unenforceability of the patent and the availability of attorney fees. *Id.* at 1348. *Fort James*

has, however, sometimes been read to stand for the proposition that unenforceability claims are moot unless a trial on infringement has taken place or the parties have expended considerable effort in preparing for trial. *See, e.g., Benitec Australia, Ltd.* v. *Nucleonics, Inc.*, 495 F.3d 1340, 1347 (Fed. Cir. 2007) (no outstanding request for attorney fees); *Silicon Graphics, Inc.* v. *ATI Techs., Inc.*, 573 F. Supp. 2d 1108, 1112 (W.D. Wis. 2008), *aff'd*, 607 F.3d 784 (Fed. Cir. 2010). Exergen's argument hinges on this narrow reading; it argues that Brooklands' counterclaim for declaratory judgment of unenforceability of the '938 patent is moot because the patent was deemed invalid through a motion for summary judgment proceeding, in which the terminated claims were not fully litigated and there was no meaningful progress toward trial.

Consequently, I turn now to focus more closely on cases involving patents that were held invalid — as the '938 patent was here — prior to the court's consideration of inequitable conduct. In 2001, the Federal Circuit affirmed the complete invalidation of two patents and held — albeit without substantial analysis — that a cross-appeal for inequitable conduct was moot. *Mycogen Plant Sci.* v. *Monsanto Co.*, 243 F.3d 1316, 1337 (Fed. Cir. 2001). Correspondingly, in 2007, after a finding that all patent claims were invalid, the Federal Circuit determined that an inequitable conduct counterclaim was moot

because the relief sought in rendering the entire patent unenforceable was not meaningful. The only relief available by an inequitable conduct determination was attorney fees, for which the party seeking inequitable conduct had not yet filed an application. *Liebel-Flarsheim Co.* v. *Medrad, Inc.*, 481 F.3d 1371, 1383 (Fed. Cir. 2007). The court concluded that the case was "*presently* moot," suggesting the possibility of a different outcome had attorney fees been the subject of a formal application when the inequitable conduct claim was pressed. *Id.* Brooklands concedes that the relief sought here is only based on attorney fees, since the asserted claims have already been held invalid. Thus, a further finding of inequitable conduct would not render any additional claims unenforceable.

In *Zenith Electronics Corp.* v. *PDI Communications Systems, Inc.*, only one claim, among many claims in a particular patent, was held invalid. *Zenith Elecs. Corp.* v. *PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1367 (Fed. Cir. 2008). The Federal Circuit held that the inequitable conduct claim there was not moot. *Id.* The Federal Circuit distinguished *Zenith* from *Liebel-Flarsheim* by stating that "[t]his case is unlike *Liebel-Flarsheim*, where we concluded that the defendant['s] [] counterclaim for inequitable conduct was moot in view of, inter alia, our determination that all of the asserted claims were invalid." *Id.* at n. 11. Furthermore, in *Liebel-Flarsheim* the party

seeking an inequitable conduct determination admitted "that a ruling of unenforceability with respect to the entire patent was not meaningful at the time," while in *Zenith* "asserted claims 2-4 of the '301 patent ha[d] not been held invalid." *Id.* at n. 11; *see also In re Omeprazole Patent Litig.*, 483 F.3d 1364, 1375 (Fed. Cir. 2007) ("The inequitable conduct claim was not technically moot, because it would have rendered the entire '281 patent unenforceable, rather than just the claims that [to that point had been] held invalid."). Here, since all of the '938 patent claims were declared invalid, *Zenith* is not directly applicable.

The question remaining then is whether, even if Brooklands cannot receive meaningful additional substantive relief because the patent has already been declared invalid, the remaining relief sought under 35 U.S.C. § 285 for attorney fees is sufficient to prevent rendering the inequitable claim moot. While there are some conflicting opinions, it appears the Federal Circuit has generally declined to declare cases moot where attorney fees under § 285 are still in the case. *See, e.g., Buildex Inc.* v. *Kason Indus., Inc.*, 849 F.2d 1461, 1466 (Fed. Cir. 1988). More specifically, the Federal Circuit has stated that "although this issue may appear moot in view of our holding that the [] patent is invalid under § 102(b), the question of . . . conduct in the procurement of the patent is

still relevant to [Defendant's] request for attorney fees under 35 U.S.C. § 285, which was not decided by district court, as bearing on the question whether the case is 'exceptional.'" *Id.* at 1466; *see also Paragon Podiatry Lab., Inc.* v. *KLM Labs., Inc.*, 984 F.2d 1182, 1188 n.6 (Fed. Cir. 1993) (per curiam) ("This issue is not mooted by our decision holding the patent invalid in view of KLM's motion for attorney fees."); *Ohio Willow Wood Co.* v. *ALPS S., LLC*, No. 2:04-CV-1223, 2012 WL 3283437, at *14 (S.D. Ohio Aug. 10, 2012), *rev'd on other grounds,* 735 F.3d 1333 (Fed. Cir. 2013) ("In light of the fact that ALPS includes a prayer for attorney fees in its counterclaim for inequitable conduct . . . this Court declines to dismiss the counterclaim as moot . . . .").

I recognize that *Buildex* was distinguished by Judge Arterton in *Sony Electronics* v. *Soundview Technologies, Inc.*, because *Buildex* contained an inequitable conduct claim that was "based on substantially the same set of facts as the invalidity counterclaim on which the district court had granted summary judgment and the Federal Circuit reversed." 359 F. Supp. 2d 173, 177 (D. Conn.), *adhered to on reconsideration*, 375 F. Supp. 2d 99 (D. Conn. 2005). The dispute in *Sony* was considered different from that in *Buildex* because the attorney fees dispute in *Buildex* was based on inequitable conduct "direct[ly] relat[ed] to the already-litigated subject matter." *Id.*

Exergen presses the negative implications of *Sony* by making the parallel argument here, contending that the inequitable conduct claim should be mooted because it is not based on the same set of facts as the successful invalidity claim.

The Federal Circuit, however, has not embraced *Sony*. In the *Advanced Magnetic Closures* litigation, the trial court had refused to accept *Sony* as a basis for not retaining independent jurisdiction over a request for attorney fees under 35 U.S.C. § 285. *Advanced Magnetic Closures, Inc.* v. *Rome Fastener Corp.*, No. 98 CIV. 7766 (PAC), 2008 WL 2787981, at *3 (S.D.N.Y. July 17, 2008), *aff'd in part*, *rev'd in part*, 607 F.3d 817 (Fed. Cir. 2010). The *Advanced Magnetic Closures* trial court distinguished *Sony* because the patent at issue in *Sony* had actually expired, mooting the claim for inequitable conduct. 2008 WL 2787981, at *3. And, on appeal, the Federal Circuit affirmed this portion of the District Court's *Advanced Magnetic Closures* opinion, stating that "this court has held that a district court retains jurisdiction to consider a motion for attorney fees under 35 U.S.C. § 285 and to make findings of inequitable conduct," and thus that the district court properly retained jurisdiction. *Advanced Magnetic Closures, Inc.*, 607 F.3d at 827.

To summarize the case law, I observe that the several cases addressing the mootness of inequitable conduct claims have declared such a claim moot when no trial on infringement has

taken place or when no considerable effort has been expended in preparation for such a trial. *Benitec Australia*, 495 F.3d at 1347. The Federal Circuit has, nevertheless, generally emphasized that when a question of attorney fees remains, even if the asserted patent has been held invalid, a case or controversy remains that can be resolved by the court.

In this connection, *Liebel-Flarsheim* may be distinguished from the case before me. While the parties have not yet made formal submissions regarding fees here, *see supra* note 1, I observe that in *Ohio Willow*, the Federal Circuit effectively affirmed the decision that the case was not moot when a prayer for relief for attorney fees had been pled. *Ohio Willow Wood Co.* v. *Alps S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013). There is no mention in *Liebel-Flarsheim* of a request in the counterclaim for relief in the form of attorney fees. *Liebel-Flarsheim Co.*, 481 F.3d at 1383. By contrast, Brooklands has framed a claim for attorney fees in the pleadings of this case.

Having explored various cases which contribute to framing the question whether a case is moot when the patent at issue has been declared invalid before an asserted claim of invalidity on the basis of inequitable conduct has been reached, I distill the various decisional streams to a problem of reasonable case management. When, in sequencing the development of a case raising invalidity, a claim of inequitable conduct does not loom

large in the critical path, resolving that claim can reasonably be deferred while other grounds of invalidity are explored and resolved. If that exploration leads to a resolution of invalidity, further resources of the parties and the court need not be expended in order to pursue an inchoate attorney fees claim under 35 U.S.C. § 285. Rather, treating the inequitable conduct claim as moot and entering judgment would appear the preferred course. By contrast, if the inequitable claim is given salience in sequencing and the parties have expended substantial resources in developing the issue for resolution, mootness may not be a preferred course even when an alternative ground for invalidity is found.

In administering its case management responsibilities under Fed. R. Civ. P. 16, a trial court should be alert to sequencing the development of the case to serve the essential purposes of the Rules of Civil Procedure as expressed in Fed. R. Civ. P. 1: the securing of a "just, speedy and inexpensive determination of every action and proceeding." The extended and redundant consideration of multiple grounds for invalidity of a patent can produce delayed and costly determination of a patent case when the case has become moot before such alternate grounds are developed.

In this case, I was not sufficiently alert to the problem of delay and expense created when the parties heedlessly marched

on to explore alternate grounds for invalidity after invalidity had been established. A more effective case management would have brought this case to final judgment without further proceedings after invalidity had been established. Having failed to recognize the need for aggressive management, I have concluded that I should now, in deference to the parties' initial choice to proceed to address inequitable conduct, resolve that issue even though treating it as moot might be a more appropriate exercise of my equitable discretion.

### III. INEQUITABLE CONDUCT

Having satisfied myself that I should not treat this case as moot because the question of attorney fees for inequitable conduct had previously been framed in the pleadings and was fully briefed in dispositive motion practice before the issue of mootness was first raised by me, I turn to Exergen's efforts to resolve the inequitable conduct claim by summary judgment.

It is settled that "[s]ummary judgment is 'as appropriate in a patent case as in any other.'" *Arrow Int'l, Inc.* v. *Spire Biomedical, Inc.*, 635 F. Supp. 2d 46, 56 (D. Mass. 2009) (quoting *Barmag Barmer Maschinenfabrik AG* v. *Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed.Cir.1984)). However, "[u]nder Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record reveals that there is no genuine issue as to any material fact and the moving party has demonstrated an

entitlement to a judgment as a matter of law." *Aventis Pharma Deutschland GmbH* v. *Cobalt Pharm., Inc.*, 355 F. Supp. 2d 586, 593 (D. Mass. 2005) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 56(c)). Disputed facts are material, and preclude summary judgment, if the facts might "affect the outcome of the suit under the governing law." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is "genuine," and bars summary judgment, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The motion for summary judgment before me as to inequitable conduct concerns a counterclaim brought by Brooklands. Brooklands thus bears the burden of proof on this counterclaim, and Exergen may be successful on its motion for summary judgment by showing that there is an absence of evidence to support Brooklands' inequitable conduct claim. *Arrow Int'l, Inc.*, 635 F. Supp. 2d at 56–57.

Brooklands presents several grounds to support its inequitable conduct claim: (A) misrepresentation regarding Exergen's prior art '813 patent during the '983 patent prosecution; (B) failure to disclose during the '685 patent prosecution, U.S. Patent Nos. 4,566,808, 4,318,998, 6,047,025, 5,325,863, 5,469,855, RE 355,554, 5,017,019, 4,626,686,

4,602,642, 4,784,149, and 4,797,840, The Physician's Desk Reference Handbook, and the Marybeth Pompei letters; and (C) misrepresentations of the state of the art during the '685 patent prosecution.

The legal standards framing the question of inequitable conduct are relatively well settled. An individual who files or prosecutes a patent application has "a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability." 37 C.F.R. § 1.56; *see also M. Eagles Tool Warehouse, Inc.* v. *Fisher Tooling Co.*, 439 F.3d 1335, 1339 (Fed. Cir. 2006). This duty extends not only to the inventor, but to all other persons who are substantively involved in the patent prosecution. *Smith & Nephew, Inc.* v. *Interlace Med., Inc.*, 955 F. Supp. 2d 69, 72 (D. Mass. 2013). A breach of this duty may result in a finding of inequitable conduct, which will invalidate the patent entirely, if the undisclosed information is material to patentability and there was an intent to deceive the PTO. *See M. Eagles Tool Warehouse, Inc.*, 439 F.3d at 1339; *Impax Labs., Inc.* v. *Aventis Pharm. Inc.*, 468 F.3d 1366, 1375 (Fed. Cir. 2006) ("If inequitable conduct occurred with respect to one or more claims of an application, the entire patent is unenforceable."). "The burden of proving inequitable conduct lies with the accused infringer."

*Star Sci., Inc.* v. *R.J. Reynolds Tobacco Co.*, 537 F.3d 1357,
1365 (Fed. Cir. 2008).  The accused infringer must show by clear
and convincing evidence the applicant's (1) affirmative
misrepresentation of a material fact, failure to disclose
material information, or submission of false material
information; and (2) intent to deceive the PTO.  *Id.*

Looking more closely at materiality and intent, I have
found information is considered material "where there is a
substantial likelihood that a reasonable examiner would consider
it important in deciding whether to allow the application to
issue as a patent."  *Arrow Int'l, Inc.*, 635 F. Supp. 2d at 58
(quoting *Digital Control Inc.* v. *Charles Mach. Works*, 437 F.3d
1309, 1315 (Fed. Cir. 2006)).  With respect to intent, there
must be a factual basis for finding that there was an intent to
deceive and this cannot "be inferred solely from the fact that
information was not disclosed."  *M. Eagles Tool Warehouse, Inc.*,
439 F.3d at 1340; *see also Cargill, Inc.* v. *Canbra Foods, Ltd.*,
476 F.3d 1359, 1364 (Fed. Cir. 2007) ("[T]he involved conduct,
viewed in light of all the evidence, including evidence
indicative of good faith, must indicate sufficient culpability
to require a finding of intent to deceive.").  The party
asserting inequitable conduct must prove by clear and convincing
evidence that the patentee "acted with the specific intent to
deceive the PTO," and this amounts to more than negligence or

gross negligence. *Smith & Nephew, Inc.,* 955 F. Supp. 2d at 73

(quoting *Therasense, Inc.* v. *Becton, Dickinson & Co.*, 649 F.3d

1276, 1290 (2011)). Intent, however, is rarely proven by direct

evidence, rather it is typically "inferred from the facts and

circumstances surrounding the conduct at issue." *Cargill, Inc.*,

476 F.3d at 1364. Thus, the more material the omission or

misrepresentation, the less burdensome the showing of intent for

purposes of a finding of inequitable conduct. *Impax Labs.,*

*Inc.*, 468 F.3d at 1375.

**A.    *Affirmative Misrepresentation Regarding Exergen's Prior Art*
  *'813 Patent during '938 Patent Prosecution***

Brooklands argues that Dr. Pompei and Attorney Smith

committed inequitable conduct through affirmative

misrepresentation in the '938 patent prosecution by arguing that

the '813 patent does not disclose, teach, or suggest "measuring

temperature of a region of the forehead." Brooklands argues

that this was necessarily a misrepresentation because during the

*Wal-Mart* and *Kids-Med* litigations, Exergen represented that the

'813 patent discloses, teaches, and/or suggests forehead

thermometry methods through its broad claims, yet during the

'938 patent application, Exergen inconsistently represented to

the PTO that the '813 patent does not disclose, teach, and/or

suggest forehead thermometry methods and apparatuses.

The manual of patent examining procedure provides that "where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the U.S. Patent and Trademark Office."  MPEP § 2001.06(c).  In the '938 prosecution, Exergen disclosed to the PTO numerous litigation documents concerning the *Wal-Mart* and *Kids-Med* cases in a supplemental disclosure statement to the PTO.  Additionally, both parties agree that the '813 patent was explicitly discussed with the Examiner, and the examiner stated that temperature measurements of "a region of skin of the forehead" are not an obvious extension of the '813 patent.  The examiner also distinguished the '813 patent from the '938 patent by stating that the "tympanic membrane is a protected area and as such is less impacted by variations of temperature"; by contrast, he observed that "the forehead has variable blood flow and is an exposed, unprotected, and temperature dependent region."

Exergen's primary argument for summary judgment of no inequitable conduct is that "characterizing the scope of these patents was simply attorney argument that cannot constitute inequitable conduct."  There are several cases that support the proposition that a "patent examiner [is] capable of independently evaluating the material before him," so, "the

representations as to how to interpret that material cannot be the basis for a finding of inequitable conduct." *Beckman Instruments Inc.* v. *LKB Produkter*, AB, No. R-85-3133, 1987 WL 125109, at *2 (D. Md. Sept. 15, 1987); *see also Gargoyles, Inc.* v. *United States*, 32 Fed. Cl. 157, 169 (1994) ("The fact that plaintiffs attempted to distinguish the claimed invention from prior art does not constitute a material omission or misrepresentation where the patent examiner was free to reach his own conclusion regarding the claimed invention on the art before him."); *LifeScan, Inc.* v. *Home Diagnostics, Inc.*, 103 F. Supp. 2d 379, 386 (D. Del. 2000), aff'd, 13 F. App'x 940 (Fed. Cir. 2001) ("[E]ven if Plaintiff's characterization of the . . . patents was inaccurate, the Court concludes that this characterization would not rise to the level of a material misrepresentation.  As the Federal Circuit has recognized, the mere fact that a patent applicant attempts to distinguish its patent from the prior art does not constitute a material omission or misrepresentation where the patent examiner has the prior art before him or her, and therefore, is free to make his or her own conclusions regarding the claimed invention.").

In the '938 patent prosecution, the '813, '238, and '435 patents were before the examiner, as were litigation documents from *Wal-Mart* and *Kids-Med*; thus, prior art and material information arising from prior related litigation was disclosed

to the examiner.  The dispute here is over attorney argument,
which lacks materiality in this setting because the examiner was
free to come to an independent conclusion with respect to the
'938 patent with all of the disclosed information to inform the
examiner's decision.

The Federal Circuit has differentiated attorney arguments
attempting to distinguish prior art from "gross
mischaracterizations or unreasonable interpretations." *Young* v.
*Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007).  Exergen's
statement that the '813 patent does not disclose a device for
measuring body temperature on the forehead is not demonstrably
false, and merely demonstrates one interpretation of the '813
patent.  As Exergen points out, I previously stated that
Exergen's legal position and prior statements on this matter "do
not foreclose a reasonable argument that the prior art patents
do not disclose or render obvious conducing measurements at the
skin of the forehead" and I have not previously found
"sufficiently clear and convincing evidence that this argument
is incorrect." *Exergen Corp.* v. *Brooklands Inc.*, 125 F. Supp.
3d 307, 324 (D. Mass. 2015), *appeal dismissed* (Fed. Cir. No. 15-
2087, Oct. 28, 2015).  I remain of the view that traditional
attorney argument is not a material misrepresentation.

Even if I were to assume materiality here and infer in
Brooklands' favor that the '813 patent discloses temperature

measurement of the forehead, there can still be no inequitable conduct without the requisite deceptive intent. "To meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Therasense, Inc.*, 649 F.3d at 1290. The "single most reasonable interference" standard applies at summary judgment. *Takeda Pharm. Co.* v. *TWi Pharm., Inc.*, 87 F. Supp. 3d 1263, 1284 (N.D. Cal. 2015).

To be sure, Brooklands argues that there is a genuine issue of material fact as to the intent prong of the inequitable conduct inquiry, and that this issue is ill-suited for resolution on summary judgment. *ICU Med., Inc.* v. *RyMed Techs., Inc.*, 752 F. Supp. 2d 486, 498 (D. Del. 2010). In light of developed Federal Circuit case law, I disagree.

The Federal Circuit, for example, upheld a grant of summary judgment in a case where the inventor of a patent made a false statement in distinguishing prior art. *Vita-Mix Corp.* v. *Basic Holding, Inc.*, 581 F.3d 1317, 1332 (Fed. Cir. 2009). The inventor stated that he believed his statement to be true at the time he made it, and with no evidence of deceptive intent on the record, the Federal Circuit determined that the district court correctly granted summary judgment by finding that there was no showing of deceptive intent. *Id.*

The only evidence of deceptive intent offered by Brooklands is that Attorney Smith contradicted Exergen's litigation positions and court decisions in the *Wal-Mart* case in attempting to obtain the '938 patent.  Since the patent examiner had all of the relevant information and could come to an independent conclusion, it is not clear that the only inference that can be drawn here points to deceptive intent, or even that a misrepresentation as such was made.  Deceptive intent is not the single most reasonable inference that can be drawn here, especially because the complained of statements are attorney-argument and the examiner was provided all pertinent information to make an independent decision regarding the '938 patent application.

Brooklands makes an independent *stare decisis* argument. The doctrine of *stare decisis* holds that "determinations of law are binding in future cases before the same court or another court owing obedience to its decision." *Boston Sci. Corp.* v. *Schneider (Europe) AG*, 983 F. Supp. 245, 255 (D. Mass. 1997), *dismissed sub nom. Boston Sci. Corp.* v. *Schneider (USA) Inc.*, 152 F.3d 947 (Fed. Cir. 1998) (internal quotation marks omitted) (quoting *Mendenhall* v. *Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed. Cir. 1993)).  Brooklands points to the *Wal-Mart* jury verdict, which concluded that the '813 patent was valid, after Exergen argued in that case and the jury found that the patent did not

apply to forehead thermometer measurements, a determination that was not reversed on appeal. The Federal Circuit has observed, however, that *stare decisis* is generally inappropriate in the posture of the litigation now before me, *Stevenson* v. *Sears, Roebuck & Co.*, 713 F.2d 705, 711 (Fed. Cir. 1983), where a prior holding of validity does not encompass the complete record regarding alleged inequitable conduct. C*f*. *Nilssen* v. *General Electric Co.*, 2008 WL 4921354 (N.D. Ill. No. 06-c-4155, Nov. 12, 2008). Principles of *stare decisis* are not dispositive on the outcome of this matter.

In sum, I conclude that Exergen has met its summary judgment burden by showing that there is an absence of evidence to support Brooklands' case with respect to inequitable conduct on a claim of affirmative misrepresentation in the '938 patent prosecution by Exergen. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 325 (1986) ("The burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.").

**B.    Deliberate Withholding of Prior Art in the '685 Patent Prosecution**

Brooklands argues that Exergen committed inequitable conduct by failing to disclose particular items to the PTO during the '685 patent prosecution. Brooklands asserts that

this invalidates the '938 patent through infectious unenforceability.

The doctrine of infectious unenforceability allows a trial court to "look beyond the final claims to their antecedents," because "[c]laims are not born, and do not live, in isolation." *Fox Indus., Inc.* v. *Structural Pres. Sys., Inc.*, 922 F.2d 801, 803-04 (Fed. Cir. 1990). A unique feature of inequitable conduct is that a finding of inequitable conduct renders the entire patent unenforceable, and can also render related patents unenforceable. *Therasense, Inc.*, 649 F.3d at 1288-89 ("[T]he remedy for inequitable conduct is the 'atomic bomb' of patent law."). A patent may render another patent unenforceable if there is an "immediate and necessary" relationship between the inequitable conduct and the patent-in-suit. *Semiconductor Energy Lab. Co.* v. *Samsung Elecs. Co.*, 749 F. Supp. 2d 892, 904 (W.D. Wis. 2010); *see also Keystone Driller Co.* v. *Gen. Excavator Co.,* 290 U.S. 240, 245 (1933) (unclean hands doctrine only applies when there is an "immediate and necessary relation to the equity that he seeks in respect of the matter in litigation."). As Brooklands states in its counterclaim, the two patents share the same title, have similar specifications, and relate to identical subject matters, and it is not disputed that there is an immediate and necessary relation between the '635 and '938 patents.

Brooklands argues that Exergen committed inequitable conduct in the '685 patent prosecution because it failed to disclose U.S. Patent Nos. 4,566,808, 4,318,998, 6,047,025, 5,325,863, 5,469,855, RE 355,554, 5,017,019, 4,626,686, 4,602,642, 4,784,149, and 4,797,840, The Physician's Desk Reference Handbook, and the Marybeth Pompei Letters.

Exergen responds that since these patents were all disclosed during the '938 patent prosecution there can be no infectious inequitable conduct claim here. The Federal Circuit has held that an applicant who is aware of misrepresentations in the prosecution of his application may cure this misrepresentation by (1) expressly advising the PTO of its existence, stating specifically where it resides, and (2) if the misrepresentation is of facts, advising the PTO what the actual facts are, with further examination by the PTO if any PTO action has been based on this misrepresentation. *Rohm & Haas Co.* v. *Crystal Chem. Co.*, 722 F.2d 1556, 1572 (Fed. Cir. 1983). Earlier inequitable conduct in a chain of related patent applications must be cured in accordance with *Rohm & Haas* or it will continue to infect the process. *Semiconductor Energy Lab., Co.* v. *Samsung Elecs. Co.*, 24 F. Supp. 2d 537, 544 (E.D. Va. 1998), *aff'd*, 204 F.3d 1368 (Fed. Cir. 2000), *amended* (Apr. 5, 2000) (since no steps were taken to cure the directly related inequitable conduct by identifying its previous omissions and

complying with the cure requirements to establish patentability on a corrected record, the later patent is rendered unenforceable). *But see Applied Materials, Inc.*, 1994 WL 270714, at *3 (holding that failure to disclose prior art reference in an abandoned application cannot be inequitable conduct when the references were disclosed in a continuing application); *Grantley Patent Holdings, Ltd.* v. *Clear Channel Commc'ns, Inc.*, 540 F. Supp. 2d 724, 733 (E.D. Tex. 2008) ("It is difficult to imagine how any inequitable conduct with respect to the . . . patent 'infected' the four later patents when those patents explicitly incorporated the publication by reference into their specifications. Any potential defect was cured by this inclusion.").

Where the alleged misconduct is the withholding of a material prior art reference, district courts are split on whether the *Rohm & Haas* requirements must be met. *eSpeed, Inc.* v. *Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580, 596 (D. Del. 2006), *aff'd*, 480 F.3d 1129 (Fed. Cir. 2007). In *eSpeed*, the trial court distinguished the factual circumstances in that case, when inequitable conduct was committed by withholding prior art references during the prosecution of a patent application leading to the issued patent, from *Applied Materials, Inc.* v. *Advanced Semiconductor Materials America*, 30 U.S.P.Q. 2d 1967, 1969 (N.D. Cal. 1994), which dealt with

inequitable conduct in an abandoned patent application.
Instead, the *eSpeed* Court decided that its facts tracked more
closely with *Semiconductor Energy Lab*, which also involved
improper omissions in a successful patent application, and
determined that the patentee was obligated to satisfy the
requirements of *Rohm & Haas* to cure inequitable conduct.
*eSpeed, Inc.*, 417 F. Supp. 2d at 596-97.  It is not settled
whether, or in what circumstances, subsequent disclosure alone
cures the prior withholding, but I need not come to a definitive
conclusion here because I grant Exergen's motion for summary
judgment on other grounds.

In assuming that all of the omitted references were
material, Exergen focuses its argument as to these grounds on
the lack of evidence of deceitful intent.  In order to deny
summary judgment on no equitable conduct, I must find that
deceptive intent was the single most reasonable inference to be
drawn from the evidence at this stage of the proceedings.
*Exergen Corp.* v. *Kaz USA, Inc.*, 120 F. Supp. 3d 1, 7 (D. Mass.
2015); *Ohio Willow Wood Co.* v. *Alps S., LLC*, 735 F.3d 1333, 1351
(Fed. Cir. 2013).  Neither the nondisclosure of prior art
references to the PTO nor failure to mention prior art
references in an affidavit amount to affirmative egregious
misconduct here, and inequitable conduct claims that are based
on such omissions require proof of but-for materiality.

*Therasense, Inc.*, 649 F.3d at 1292–93. Under the *Therasense* standard, to prove specific intent the accused infringer "must prove by clear and convincing evidence that the applicant knew of the reference, knew it was material, and made a deliberate decision to withhold it." *Therasense, Inc.*, 649 F.3d at 1290; *see also Optium Corp.* v. *Emcore Corp.*, 603 F.3d 1313, 1320–21 (Fed. Cir. 2010) ("In situations of nondisclosure of information rather than affirmative misrepresentation, 'clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference.'"). Basing deceptive intent on materiality of omitted information is insufficient under the *Therasense* standard because a district court may not infer intent solely from materiality. *Therasense, Inc.*, 649 F.3d at 1290. Additionally, a patentee is not required to provide any good faith explanation for his conduct unless and until an accused infringer has met his burden to prove intent to deceive by clear and convincing evidence. *1st Media, LLC* v. *Elec. Arts, Inc.*, 694 F.3d 1367, 1373 (Fed. Cir. 2012). Brooklands argues that there is still a genuine question of material fact concerning intent, but it has failed to adduce any evidence that could make deceptive intent the single most reasonable inference to be drawn from the evidence at this stage.

Exergen argues, and Brooklands fails to rebut with any evidence, that Dr. Pompei and Attorney Smith believed the prior art to be immaterial or already adequately disclosed.  A discussion of items that Brooklands claims that Exergen should have disclosed puts the argument in focus.  Beginning with patents that disclose measuring surface temperatures: U.S. Patent No. 4,566,808 discloses heat loss and temperature differences for buildings, plumbing, machinery, as well as animals and humans to detect inflammation or lack of circulation; 5,017,019 discloses a radiation detector that provides differential temperature readings for animals and humans, and describes scanning the leg of a horse to detect injury; RE 35,554 discloses a radiation detector that detects temperature across a surface with a temperature display and discusses infrared inspection of electrical equipment; 4,626,686 discloses a "variable field of view heat scanner"; and 4,797,840 discloses an infrared thermometer for medical use and use on the human body.  Exergen argues that there is no evidence that Dr. Pompei or Attorney Smith considered these any more relevant than other provided disclosures, which included U.S. Patent No. 4,636,091, a patent that describes a device used to measure the surface temperature anywhere on the skin surface of a patient. Under the circumstances, there is no evidence that the single

most reasonable inference to be drawn here is the intent to deceive.

Next, Exergen discusses the ear thermometer patents that were not disclosed, including: U.S. Patent No. 6,047,205, which discloses a method of detecting the temperature of biological tissue; 5,325,863, which describes a radiation detector for body temperature; 5,469,855, which discloses a continuous temperature measurement device; and 4,602,642, which discloses an apparatus for measuring body temperature utilizing infrared emissions by taking measurements across a surface. In addition, there are two other patents that Brooklands claims Exergen should have submitted in the '635 patent prosecution: U.S. Patent No. 4,317,998, which discloses a scanning radiation detecting apparatus; and 4,784,149, which is an infrared thermometer designed to measure the temperature of tissue of a body cavity.

Exergen argues that no intent can be established because other patents — such as the U.S. Patent No. 4,428,382, which discusses measuring skin temperature by scanning "across a predetermined part of the body" — that address "scanning across a surface" were before the PTO during the '685 prosecution. Additionally, Exergen points to U.S. Patent 5,050,612, a disclosed reference, which Exergen admitted teaches body temperature at the forehead, but was able to distinguish this patent during the '685 prosecution because "it does not teach

the computation of body temperature value as a variable weighting or calibration function of ambient temperature and sensed surface temperature." Brooklands offers no additional evidence of intent, other than the failure to disclose the prior art references.

Under these circumstances, I cannot conclude there is a genuine issue whether deceptive intent is the single most reasonable inference that can be made regarding the omitted prior art references.

Brooklands also claims inequitable conduct for failure to disclose the Physician's Reference Handbook during the '685 prosecution, which discloses the use of heat-sensitive liquid crystal strips affixed to the forehead to measure body temperature and the use of infrared thermometers to detect body temperatures across a surface. Exergen argues that the Physician's Reference Handbook merely describes previously disclosed inventions, including the '091 patent, which was disclosed in the '685 prosecution and the '813 patent which discloses temperature measurements in the inner ear. Here again, Brooklands has failed to offer clear and convincing evidence of deceptive intent, and there are other inferences that can be drawn from the evidence, such as a good faith belief that this information was not material. *See Exergen Corp.* v. *Kaz USA, Inc.*, 120 F. Supp. 3d at 7 (holding that there was no

deceptive intent in Exergen's failure to disclose the Physician's Reference Handbook].

Lastly, Brooklands argues specific intent to deceive by not disclosing the Marybeth Pompei letters. In these letters there is a consideration of an "arterial thermometer" to measure body temperature at the ear, but that approach had not yet been fully developed. As Exergen argues, it is not even clear that this is prior art, but even if it is, Brooklands makes no showing of deceptive intent in Exergen's failure to submit this material during the '685 patent prosecution.

Overall, there are multiple inferences that can be drawn from each of the withheld pieces of information. Brooklands does not present evidence to make deceptive intent the single most likely inference. Indeed, deceptive intent seems the least likely of inferences. Even taking all inferences in Brooklands' favor, I find no basis not to grant Exergen's motion for summary judgment as to this branch of the inequitable conduct claim.

## C. *Mischaracterizing the State of the Art During the '685 Patent Prosecution*

The last argument that Brooklands makes is that Exergen mischaracterized the state of the art during the '685 patent prosecution. Brooklands bases its argument on the fact that Exergen's marketing materials state that "[t]he temporal artery area has a long history of temperature measurement, dating back

to the early centuries before Christ," which Brooklands views as confirming the existence of prior art with the same claims as the '685 patent that Dr. Pompei and Attorney Smith represented as not being found in prior art. Brooklands claims that if the examiner had known of the statements on Exergen's marketing materials, the '685 patent would not have been issued. Exergen, however, responds that its brochure, which was disclosed during the '685 patent prosecution, corresponds exactly to the text from Exergen's website marketing materials which the examiner was able to consider while evaluating whether to issue the patent. Moreover, as Exergen argues, the identified statement does not disclose actual forehead temperature measurement, rather it merely discusses the historical practice of touching the forehead to feel for warmth to gauge the status of a person's health. In sum, there was no mischaracterization of prior art in this regard.

## IV. CONCLUSION

For the foregoing reasons, I GRANT Exergen's motion [#156] for summary judgment as to inequitable conduct.[2]

*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

[2] To bring this case definitively to a conclusion, I also GRANT Brooklands' motion [#138] to dismiss its antitrust counterclaims thereby rendering MOOT Exergen's motion [#126] for entry of a Rule 54(b) judgment and a stay pending appeal.